UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: NACOR A. TRUJILLO JR. and    Case No. 13-12434
SYLVIA D. PADILLA TRUJILLO

Debtors.

MOUNTAIN AMERICA CREDIT UNION

Plaintiff,

v.    Adv. No. 13-1095

NACOR A. TRUJILLO JR. and
SYLVIA D. PADILLA TRUJILLO

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court following a trial on the merits of this adversary proceeding. Plaintiff Mountain America Credit Union ("Mountain America") seeks a declaration that certain debts of the Debtor-Defendants' are non-dischargeable under 11 U.S.C. § 523(a)(6). Mountain America contends that the Defendants willfully and maliciously injured its collateral by relinquishing possession and control of the property to a third party without Mountain America's knowledge or consent. After considering the evidence presented at trial and the argument of the parties, and being otherwise sufficiently informed, the Court finds that the Defendants' conduct does not rise to the level of willful and malicious for purposes of Section 523(a)(6). The Defendants' debts to Mountain America are therefore dischargeable.

FINDINGS OF FACT

Mountain America is a credit union operating in southern New Mexico. Until 2012, Debtor-Defendant Nacor Trujillo owned and operated a transmission repair shop in the same area. On January 31, 2009, Mr. Trujillo entered into a contract for the purchase of a recreational

vehicle (the "RV") with Mountain America's assignor, United RV Sales. Mr. Trujillo financed $27,000 of the purchase price of the RV and granted United RV a security interest in the collateral. In connection with the financing, Mr. Trujillo executed a single document containing the terms of a promissory note in favor of United RV Sales, a security agreement, and a loan agreement (the "Loan Agreement"). *See* Mountain America's Exhibit 1. The front page of the Loan Agreement contains essential terms such as the loan amount and the interest rate. The reverse page of the Loan Agreement sets forth covenants and restrictions in fine print. United RV Sales assigned the Loan Agreement to Mountain America.

The Loan Agreement placed various restrictions on Mr. Trujillo's use of the RV. Pursuant to the agreement, he agreed:

> (a) [T]o maintain, protect, and … preserve the Collateral;
> (b) [N]ot to use or permit anyone to use the Collateral in violation of the [Loan Agreement];
> …
> (e) [T]o help [Mountain America] do all that is necessary to protect [Mountain America's] security interest in the Collateral…; and
> (f) [N]ot to sell, encumber, lease, rent, otherwise dispose of, or give the Collateral to anyone else other than [Mountain America].

*See* Exhibit 1, Loan Agreement, on the reverse side under the heading "Protection of Collateral." Mr. Trujillo signed the Loan Agreement, but he did not read the fine print on the reverse side and was unaware of the above requirements.

Between 2009 and the spring of 2012, Mr. Trujillo made payments to Mountain America or its assignor under the Loan Agreement. In June of 2012, he became very ill and was hospitalized. Around the same time, Mr. Trujillo lent the RV to his friend Alfonso Chavez. Mr. Trujillo was unable to work and needed help making the loan payments due to his hospital stay. Mr. Chavez needed a place to live for a few months while he worked on an oil field in Odessa, Texas. Mr. Trujillo loaned the RV to Mr. Chavez to live in for a brief period. While in

possession of the RV, Mr. Chavez promised to remit the monthly loan payments to Mr. Trujillo, who would then pay Mountain America. Mr. Chavez agreed to return the RV to Mr. Trujillo after a few months. There was no formal agreement governing the arrangement. Mr. Trujillo did not require Mr. Chavez to pledge any collateral. Mr. Trujillo trusted Mr. Chavez to make timely payments and to return the RV after a few months because they had been friends for approximately 10 years. Mr. Trujillo also had possession of Mr. Chavez's vehicle at the time, which was brought to Mr. Trujillo's transmission shop for repair.[1] Though Mr. Trujillo knew Mountain America had an ownership interest in the RV, he was unaware that his arrangement with Mr. Chavez violated the terms of the Loan Agreement.

About a week after Mr. Chavez took possession of the RV, Mr. Trujillo visited the RV park in Odessa, Texas where Mr. Chavez was staying. Mr. Trujillo had no concerns about the arrangement at that time. By August of 2012, however, Mr. Chavez had disappeared. He failed to remit any payments, and when Mr. Trujillo attempted to contact Mr. Chavez regarding the missed payments, Mr. Trujillo could not reach him. Shortly thereafter Mr. Trujillo hired someone to retrieve the RV from Mr. Chavez in Odessa. That individual was not able to locate the RV or Mr. Chavez. Mr. Trujillo made several other attempts to recover the RV including contacting Mr. Chavez's mother to inquire about his whereabouts. No one has been able to locate the RV since Mr. Chavez absconded with it. Mr. Trujillo never reported the RV as stolen.

During the fall of 2012, Mountain America attempted to repossess the RV from Mr. Trujillo numerous times. On at least one occasion, Mr. Trujillo informed the individual Mountain America retained to repossess the RV that he was no longer in possession of the collateral but that he was trying to get it back. The representative did not relay that information to Mountain America, presumably because he did not believe it.

---

[1] The vehicle was later repossessed by Mr. Chavez's lender.

Mr. Trujillo continued to experience serious medical problems throughout the rest of 2012. He was in and out of the hospital between June and December and was forced to close his transmission repair business because he could no longer work. Mountain America was not aware that Mr. Trujillo loaned the RV to Mr. Chavez until after July 22, 2013, the date the Defendants commenced the bankruptcy case (the "Petition Date"). The Defendants did not contact Mountain America with such information sooner because they were focused on his medical problems. After his release from the hospital, Mr. Trujillo was taking various medications and became deeply depressed. His wife, Debtor-Defendant Sylvia Padilla Trujillo, did not contact Mountain America regarding the missing RV because she was focused on her husband's medical problems and their failing business. In addition, Mrs. Padilla Trujillo regularly experienced problems accessing his account with Mountain America. On some occasions Mountain America representatives would speak with her about the account and on others they would refuse.

The evidence does not establish that Mountain America ever directly asked the Defendants to provide information about the location of the RV or that they refused to do so. It is possible that Mountain America assumed the Defendants were storing the RV in a garage or other enclosed space to avoid repossession, as borrowers sometimes do.

In the spring of 2013, Mountain America filed a replevin action in state court seeking possession of the RV. Before the state court could sign a judgment against the Defendants, they commenced their Chapter 7 bankruptcy case. As of the Petition Date, Mr. Trujillo was approximately 16 months past-due on his payments under the Loan Agreement. The unpaid principal balance due under the Loan Agreement is $24,447.73. The RV is estimated to be worth approximately $16,000.00.

DISCUSSION

Mountain America asserts the Defendants willfully and maliciously converted its collateral by their transfer of the collateral to a third party and its subsequent disappearance. Debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity" are excepted from the general discharge. 11 U.S.C. § 523(a)(6). Section 523(a)(6) requires that the debtor's actions be *both* willful and malicious. *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (holding that there must be proof of both a "willful act" and "malicious injury" to establish nondischargeability under Section 523(a)(6)). The "willful" element requires both an intentional act and an intended harm; an intentional act that leads to an unintended harm is not sufficient. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A "willful act" is therefore one in which the debtor "'desire[s] to cause the consequences of his act or ... believe[s] that the consequences are substantially certain to result from it.'" *Moore,* 357 F.3d at 1129 (quoting *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999)). For a debtor's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse. *Fletcher v. Deerman (In re Deerman)*, 482 B.R. 344, 369 (Bankr.D.N.M.2012).[2]

---

[2] *See also Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 880 (Bankr.D.Colo.2004) (finding that "the malice prong of 11 U.S.C. § 526(a)(6) is satisfied upon a showing [that] the injury was inflicted *without just cause or excuse*") (emphasis in original) (internal citations omitted)); *America First Credit Union v. Gagle (In re Gagle),* 230 B.R. 174, 181 (Bankr.D.Utah 1999) (finding that "[i]n order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious)"); *Saturn Systems, Inc. v. Militare (In re Militare),* 2011 WL 4625024, *3 (Bankr.D.Colo.2011) ("[A] *malicious* act under § 523(a)(6) is a wrongful act, done intentionally, without just cause or excuse.") (internal quotations omitted); *Tso v. Nevarez (In re Nevarez),* 415 B.R. 540, 544 (Bankr.D.N.M.2009) ("'Malicious' requires that an intentional act be performed without justification or excuse.") (internal quotations omitted). *But cf. McCain Foods USA, Inc. v. Shore (In re Shore),* 317 B.R. 536, 543 (10th Cir. BAP 2004) (pointing out that "neither *Geiger* nor the Tenth Circuit have explicitly addressed whether a plaintiff must demonstrate that an injury occurred without just cause or excuse in a § 523(a)(6) proceeding or even what circumstances might establish such an element").

5

The Tenth Circuit applies a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). Evidence of the debtor's state of mind may be inferred from the surrounding circumstances. *Nat'l Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 656 n. 2 (Bankr.D.Colo.2003) (noting that it is "absolutely permissible to infer … actual intent to cause injury from … evidentiary facts") (internal citations omitted).[3]

Conversion is defined as "the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *In the Matter of Yalkut,* 143 N.M. 387, 394, 176 P.3d 1119, 1126 (2008).[4] Under some circumstances, conversion can support a finding of non-dischargeability under 11 U.S.C. § 523(a)(6). *In re Pasek*, 983 F.2d 1524, 1527 (10th Cir .1993) (holding that conversion of another's property can constitute a willful and malicious injury within the meaning of Section 523(a)(6)) (*overruled in*

---

[3] *See also Allison v. Dean (In re Dean),* 2013 WL 1498305 (Bankr.M.D.Ala.2013) ("[T]he debtor's subjective intent in an action under section 523(a)(6) may be inferred from surrounding circumstances."); *Smith v. Davenport (In re Davenport),* 491 B.R. 911, 922 (Bankr. W.D.Mo. 2013) (noting that the "Court may consider both direct evidence of the debtor's subjective state of mind and evidence of the surrounding circumstances, and then may make appropriate inferences as to whether the debtor harbored the proscribed intent").

[4] Although bankruptcy law governs whether a claim is nondischargeable under Section 523(a)(6), courts look to state law to determine whether an act constitutes conversion. *Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir.1999); *Soutsos v. Johns (In re Johns),* 2008 WL 3200096, *4 (10th Cir. BAP 2008) (applying Colorado's definition of conversion to analyze whether a debt was dischargeable under Section 523(a)(6)); *Leon v. Cordova (In re Cordova),* 2013 WL 3934373, *6 (D.N.M. 2013) (noting that the defendant's actions constituted conversion under New Mexico law and determining that such conversion was "willful" for purposes of Section 523(a)(6)).

6

*part and modified by Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).[5]  However, "[n]ot every conversion constitutes a willful and malicious injury." *Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, *11 (10th Cir. BAP 2011).  "There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach),* 500 B.R. 22, 32 (Bankr.D.Kan. 2013) (quoting *Davis v. Aetna Acceptance Co*., 293 U.S. 328, 332 (1934)).

Mountain America correctly points out that Mr. Trujillo violated the Loan Agreement by relinquishing possession and control of the RV to Mr. Chavez and by failing to inform Mountain America when it disappeared.  The Loan Agreement expressly prohibited Mr. Trujillo from lending the collateral without Mountain America's consent.  He was also required to do "all that is necessary to help Mountain America protect its security interest in the collateral."  Although Mr. Trujillo did not familiarize himself with the Loan Agreement before signing it, he was nevertheless bound by its terms.  *See Dantonio v. Crowder,* 149 N.M. 249, 434, 249 P.3d 1249, 1257 (Ct. App. 2010) ("[E]ach party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby.").[6]  There is also a strong argument that the collateral

---

[5] *See also Farmers Ins. Group v. Compos (In re Compos),* 768 F.2d 1155, 1157 (10th Cir.1985) (concluding that Section 523(2)(6) "refers to willful and malicious conversions as well as injuries"); *Soutsos v. Johns (In re Johns),* 2008 WL 3200096, *4 (10th Cir. BAP 2008) ("There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of the § 523(a)(6) exception."); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) (same).

[6] *See also Smith v. Price's Creameries, Div. of Creamland Dairies, Inc.,* 98 N.M. 541, 545, 650 P.2d 825, 829 (1982) ("Generally, a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party."); *Sexson v. Edwards,* 2014 WL 1314946, *2 (N.M. Feb. 24, 2014) (noting that when a party signs a written agreement without objection, he or she is generally bound by its terms).

7

was converted. The arrangement constituted "an unauthorized and injurious use of" Mountain America's property and defied its rights under the Loan Agreement.

Assuming Mr. Trujillo breached the Loan Agreement and converted the collateral, however, the Court is not convinced that such conduct renders the debt non-dischargeable under Section 523(a)(6). The evidence at trial demonstrates that Mr. Trujillo did not intend to harm Mountain America, nor was he substantially certain harm would occur. Mr. Trujillo believed that Mr. Chavez would make timely payments and return the RV after several months. Such belief was not entirely unreasonable. The gentlemen had been friends for 10 years, Mr. Trujillo visited the RV park where Mr. Chavez was initially staying and saw the RV there, and Mr. Trujillo was in the process of repairing Mr. Chavez's vehicle at the time. Further, when Mr. Chavez disappeared with the RV, Mr. Trujillo made several attempts to locate and recover it. He inquired with Mr. Chavez's mother as to his whereabouts and even paid someone to travel to Odessa, Texas to repossess the RV from Mr. Chavez.

Mountain America argues that, even if Mr. Trujillo believed that lending the RV to Mr. Chavez would be harmless, his failure to notify Mountain America when the collateral disappeared was patently unreasonable. The Court is not unsympathetic to this argument. Mr. Trujillo or his wife should have contacted Mountain America sooner and/or reported the RV as stolen. Based on the testimony at trial, however, the Court does not believe that the Defendants were fully cognizant of the harm they were causing or intentionally concealed the disappearance of the RV. Between July or August of 2012 - when Mr. Chavez absconded with the RV - and the Petition Date, the Defendants were focused on Mr. Trujillo's severe illness. He was in and out of the hospital for six months and was forced to close his business because he could no longer work. After his release from the hospital, he became very depressed and was taking various

medications. Though Mrs. Padilla Trujillo could have tried harder to contact Mountain America, she was distracted by his medical issues and was not always able to access the Mountain America account on her husband's behalf.

Further, unlike most cases under Section 523(a)(6) involving the conversion of collateral, the Defendants did not dispose of the RV in order to keep the proceeds . As one bankruptcy court explained:

> With respect to collateral conversion cases … the 'true injury' in such cases is that 'the creditor's collateral was wrongly or improperly disposed of and that the proceeds were used for purposes other than payment of the obligation that the property secured ... the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that property secured. If so, there is an intentional injury.

*In re Doughty,* 2011 WL 4368689, *5 (Bankr. S.D.Ind. 2011) (quoting *In re Russell*, 262 B.R. 449, 454-455 (Bankr.N. D.Ind. 2001). The Defendants here did not profit from the arrangement, nor did they lie to Mountain America regarding the location of the collateral. Mr. Trujillo informed the individual Mountain America retained to repossess the RV that he no longer had it and was trying to get it back. Under these circumstances, the Court finds that the Defendants did not willfully injure Mountain America.

The Court is also not persuaded that the Defendants' conduct was malicious. As discussed above, there were extenuating circumstances that caused the Defendants to loan the RV to Mr. Chavez and to delay contacting Mountain America when it disappeared. Based on Mr. Trujillo's severe health and financial problems, the Court cannot conclude that the Defendants' actions were "intentional, wrongful, [or] done without justification or excuse." Mountain America is therefore not entitled to judgment on its claim under Section 523(a)(6).

9

Case 13-01095-j    Doc 29    Filed 07/03/14    Entered 07/03/14 15:26:17 Page 9 of 10

CONCLUSION

Based on the foregoing, the Court concludes that the Defendants' actions were not willful or malicious for purposes of 11 U.S.C. § 523(a)(6). Mountain America's claims are therefore denied. The Court will enter a separate judgment consistent with this memorandum opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 3, 2014

COPY TO:

Katharine Downey, Michelle Ostry, and Justin Sawyer
P.O. Box 1945
Albuquerque, NM 87102-1945

Nacor A Trujillo, Jr. & Sylvia D. Padilla Trujillo
2874 Lake Valley Ave
Las Cruces, NM 88007